Hibbard v. Kirby.

---

HIBBARD V. KIRBY.

1. JUSTICES OF THE PEACE: *Jurisdiction; Amount.*
   An action upon an account for less than three hundred dollars is within the jusrisdiction of a justice of the peace.

2. PRACTICE: *Defects in service or summons waived by answer.*
   Any defect in the summons or service is waived by filing an answer to the merits.

3. CONTINUANCE: *Absent witness; Practice.*
   A motion for continuance for the absence of a witness should be overruled, if the adverse party will admit that the witness, if present, would testify as stated in the motion.

4. BILL OF EXCEPTIONS: *The evidence.*
   A bill of exceptions should state expressly that it contains all the service, but will be sufficient if it shows with reasonable certainty by its expressions that no other evidence was introduced than that set out in it.

5. CONTRACTS FOR SERVICE: *Entire ; Action on.*
   When a contract for service is for a particular time, and payment is to be made either expressly or by implication of law, at the end of the period, and the servant leaves the service of his master improperly, without a sufficient cause, and without his consent, before the expiration of that time, he can recover no compensation for his services, either on the contract or on a *quantum meruit.*

6. JUSTICE OF THE PEACE: *Practice ; Variance.*
   In an action before a justice of the peace on an open account for wages, (no formal complaint being filed) the plaintiff may prove a verbal contract for stipulated wages if any was made, or if not, the value of the services rendered.

APPEAL from *Montgomery* Circuit Court.

HON. A. B. STUART, Circuit Judge.

*R. G. Davies* for appellant:

1   The verdict was contrary to the evidence and the first instruction, and was such as to shock the sense of justice. 1 *Parsons Cont.*, 520, *et seq.*, *notes (j) (l) and (n), p.* 524, (*o*), 522 (*l*) ; *Temple* v. *McLachlan*, 2 *Bos. & Pul.*, *N. R.*, 136 ; *Farnsworth* v. *Garrard*, 1 *Campbell*, 38 ; *Withers* v. *Green*, 9 *How*, 227–8 ; 11 *How*, 475 ; 6 *N. H.*, 481 ; *Thas* v. *Williams*, 1 *Ad. and El.*, 28 ; *E. C. L.*, 258 ; *Bac. Ab.*, *master and servant (N.); Chitty Cont.*, 577, *n.* (1); *Ib.*, 579, *n.* (1).

2.   There was no final judgment before the justice.

3.   The summons improperly served.   *Gantt's Dig.*, *secs.* 3735, 4082, 5648.

4.   The second instruction for appellant should have been given.   27 *Ark.*, 564 ; 31 *Ark.*, 486.   Also the 5*th*, 24*th Wend.*, 63 ; 45 *N. Y.*, 165; 2 *Pick*, 274.   Also the 7*th*, 13*th John.*, (*N. Y.*) 94; 9 *N. Y.*, 96 ; 18 *Wend.*, 187 ; 17 *N. Y.*, 185 ; 20 *N. Y.*, 429, 487.   See also, 12 *Johnson*, 165 ; 10 *Ib.*, 203 ; 8 *Cow.*, 63 ; 4 *Denio*, 121 ; 20 *N. Y.*, 197.

*W. F. Hill* for appellee.

1.   This court will not disturb a verdict on a mere conflict of evidence.

2.   The bill of exceptions does not purport to contain all the evidence, and this court will presume that there was evidence to support the verdict.   *Moss* v. *State*, 17 *Ark.*, 331.

3.   The court properly instructed the jury, and did not err in refusing the instructions asked.

*U. M. Rose* also for appellee.

1.   Nothing in bill of exceptions to show it contained all

the evidence, and this court will presume there was evidence
to support verdict and justify instructions.    *Moss* v. *State,*
*sup.; Taylor* v. *Spears*, 3 *Eng.*, 430.

2.    The instructions are correct. ·

3.    The continuance properly refused.    *Gantt's Dig.,*
*sec.* 4631. ·


ENGLISH, C. J.    On the eleventh day November, 1879,
Wellington Kirby sued Richmond Hibbard on an open
account before a justice of the peace of  Silver City, Mont-
gomery county.

The  claim  was  for services rendered, ·and  labor
        performed by plaintiff, for and in the employ-
        ment of defendant  from June 25th, until the
        eighth  day  of October, 1879, sixteen  weeks
        at  six days to  the week, ninety-six  days, at
        $5 per day,.............................. $480.00
Credits, by cash at various times, paid in
        Chicago.............. .............$100.00
By cash at various times................. 104.90—204.90

        Balance claimed.................... .... $275.10

Upon  a  summons  issued  by  the  justice,  the  constable
returned service upon the defendant, and that he had seized
into his custody, as property on  which  plaintiff  claimed a
lien for his labor, an engine and boiler,  a rotary  pump and
belting, a furnace  and  piping,  a building,  rotary fan and
belting, an iron tank,  and  a  smelting furnace and imple-
ments.

On the return day, the defendant filed a motion to dismiss
the cause for  want of  jurisdiction, which the justice over-
ruled.

Defendant then filed an answer, in which  he  denied that

Hibbard v. Kirby.

he was indebted to plaintiff in any sum whatever, and on the contrary alleged that the plaintiff owed him $300.

On hearing the evidence, the justice gave judgment in favor of plaintiff for $275, and defendant appealed to the Circuit Court.

In the Circuit Court C. D. & W. L. Bancroft filed a motion in which they claimed to be the owners of the property seized by the constable, and asked to be made defendants, which the court overruled.

There was a trial by jury, verdict and judgment in favor of plaintiff for $275, motion for a new trial overruled, bill of exceptions, and appeal by defendant.

I. It is a matter of no consequence whether the court erred in refusing to permit C. D. & W. L. Bancroft to be made defendants. There was a personal judgment against appellant only, and no lien fixed upon the property seized by the constable, and no condemnation of it to satisfy the judgment.

II. Before the trial, the motion filed before the justice to dismiss the cause for want of jurisdiction, was taken up, argued and overruled by the court.

*1. JUSTICE OF THE PEACE: Jurisdiction. Amount.*

The sum claimed in the account filed was less than $300, and within the jurisdiction of the justice. *Sec. 40, Art. 7, Constitution.*

Any defect in the summons, or service, was waived by filing an answer to the merits.

*2. PRAC- TICE: Defects in service, etc.*

It is not material whether the justice had jurisdiction to enforce a laborer's lien on the property seized by the constable or not. There was no judgment for a lien in the Circuit Court.

III. It was made ground of the motion for a new trial, that the court overruled a motion for a continuance filed by appellant.

*3. CONTIN- UANCE: Absent witness.*

13–38

In the motion appellant stated that he could prove by W. L. Bancroft, an absent witness, that appellee told him that appellant had only contracted to give appellee seventy-five dollars per month, and not five dollars per day as alleged.

Appellee admitted that if the absent witness were present at the trial, he would testify to the statement contained in the motion, whereupon the court overruled the motion.

This was in accordance with the act of March 5th, 1879, (*Acts of* 1879, *p.* 26), amending *Sec.* 4644, *Gantt's Dig.*

4. BILL OF EXCEP-TIONS: The evi-dence.     IV.     It was made grounds of the motion for a new trial, that the verdict was contrary to the evidence, and that the court erred in refusing certain instructions moved for appellant.

Counsel for appellee submit that the bill of exceptions does not purport to contain all of the evidence introduced on the trial, and that therefore this court should presume that there was evidence to support the verdict, and justify the instructions of the court.

It is true that the bill of exceptions does not follow the proper practice by expressly stating that it contains all the evidence introduced, or facts proved on the trial, but it appears with reasonable certainty, from its expressions, that no other evidence was introduced than that set out by it.

It first sets out the evidence introduced by appellee (plaintiff below) and then states: "Plaintiff here rested."

Then the evidence introduced by appellant (defendant below) is set out, and then follows: "Defendant here rested. The court thereupon gave the following instructions for plaintiff," &c.

This statement reasonably excludes the presumption that appellee introduced any evidence in rebuttal after appellant closed. *Leggett* v. *Grimmett*, 36 *Ark.*, 496.

V. The substance of the evidence introduced on the trial, as stated in the bill of exceptions, follows :

Plaintiff Kirby (appellee here) testified that on or about the twenty-fifth of June, 1879, defendant Hibbard (appellant here) engaged him in Chicago, Illinois, to select, ship, erect and run a certain smelting works at Richmond, Montgomery county, Ark., defendant's place of residence. That defendant agreed to give him five dollars per day for his services in the matter. That he was at the time engaged in the carpenter's business, his trade, but had been engaged in the smelting works of the "Horn Silver Mining Company" for seven months, and was getting $1.50 per day for his services, and boarding himself. He told defendant he understood the business of erecting a smelter, and running it, for the extraction of silver ores. That he left Chicago about the sixteenth of July, 1879, and defendant paid him $100.00 as an advance payment on his wages. That he proceeded in the erection of the works, but did not complete them. Defendant paid him at different times $104.90 more, making $204.90. He remained in the employment of defendant until the eighth day of October, 1879, when he left, without giving defendant any previous notice. He simply went in, and told him he was going to Chicago. Defendant asked him, what for? He replied, to buy a smelter for one Blish. Defendant said, all right. He left, and had continued in the employment of said Blish ever since. Erected a smelter for him, and it was started, but it failed to smelt ore for want of enough ore.

Never told W. L. Bancroft, at any time, that his engagement with defendant was for $75 per month.

D. C. Baldwin testified that he had been mining for the previous 20 years. Never smelted any ores, but had seen them smelted. The works erected by plaintiff seemed to be

erected all right. Thought that such services as plaintiff performed were worth from three to five dollars per day.

"Plaintiff here rested."

Defendant testified that being desirous of purchasing a stamp mill for the reducing of silver ore, he went to Chicago in June, 1879, and met plaintiff, who stated that he understood the erection and operation of a smelter for said ore. Agreed to give him $5 per day to purchase machinery for him, and he was so engaged for three days, for which he paid defendant $15.00. And agreed to give him $75.00 per month, and board thereafter, to erect, and put in successful operation the works at Richmond, Montgomery county, Ark. Paid plaintiff $100.00 which was a settlement for purchasing the machinery, and one month's wages. Plaintiff came to Richmond, and partially erected the works. Before he had completed them, without notifying defendant, he came in one morning, and said: "I am going to Chicago to-morrow to buy a smelter for Mr. Blish." Defendant told him "all right," which he did. That was about all that was said. Defendant did not discharge him. Plaintiff never returned to his employ—was still working for Blish. Had no confidence in plaintiff's ability to perform his contract owing to the fact that he made assays of ores and pretended to tell how many dollars of silver they would go to the ton, without weighing the silver buttons. Did not discharge plaintiff; he discharged himself. Paid him money whenever he called for it.

Defendant then read in evidence his statement in the motion for continuance that W. L. Bancroft would testify, if present, that plaintiff told him that defendant only agreed to give plaintiff $75.00 per month.

By way of rebuttal, plaintiff testified, that he never had any conversation with W. L. Bancroft, to the effect

that he was to receive $75.00 per month instead of $5.00 per day.

John Morse, for defense, testified that he was a machinist, and placed the engine of the smelting works at Richmond in proper position, and put it in running order. That plaintiff only put it in the inside of the enclosure.

"Defendant here rested. The court thereupon gave the following instructions," &c., &c.

Before considering the instructions, it may be remarked that the evidence was conflicting, and it was the province of the jury to weigh it, and determine whether the preponderance was for appellee or appellant.

Appellee's version of the contract was that he was to get $5 per day for his services. Appellant testified that he agreed to give him $5 per day while purchasing machinery, and thereafter $75 per month, and his board, for his services. He did not prove that he boarded him, or paid for his board while in his employment. They did not differ as to the time when, nor as to the circumstances under which the employment ceased.

If the court properly instructed the jury, the verdict should not be disturbed on the ground that it was contrary to the evidence.

VI. Appellee moved three instructions, the first of which the court gave, and refused the other two. That given, and to which no objection appears to have been made by appellant, was : *Instructions.*

"That if the jury find from the evidence that defendant agreed to pay the plaintiff the sum of five dollars per day for his services, and they also find that the contract was by mutual agreement dissolved on the eighth day of October, 1879, they will find for plaintiff."

VII. Appellant moved the following instructions :

1. "The court instructs the jury that when a party con-

tracts to serve until a certain result is accomplished, if he quits without just cause, he is not entitled to recover anything for his contract." [*Given.*]

2. "If the jury believe from the evidence that plaintiff is a mechanic, builder, or artisan, and not an ordinary laborer, they will find for the defendant." [*Refused.*]

3. "A contract entire in point of time must be completely performed before any right to compensation accrues." [*Refused.*]

4. "When a person undertakes to do work, which requires skill in the performance of his contract, he will be held to strict performance thereof, and should he fail, he is not entitled to compensation." [*Given.*]

5. "The plaintiff is suing upon his contract, and cannot recover upon a *quantum meruit*; that is, unless he has complied with his contract, he is not entitled to recover what the work is reasonably worth." [*Refused.*]

6. "If a person holds himself out to the world, as a workman, that very representation raises a covenant that he will do his work in a workmanlike manner." [*Given.*]

7. "When the time of payment is, not expressed, the implied agreement is, that it shall be when the service is performed." [*Refused.*]

The court gave the 1st, 4th and 6th, and refused the 2nd, 3d, 5th and 7th of these instructions.

(*a*). The second instruction asked for by appellant, and refused by the court, manifestly related to the laborer's lien feature of the suit, as to which there was no verdict or judgment; and as an abstract proposition, whether law or not, is of no consequence in this suit. The proper steps to fix such a lien, if there was a right to any, do not appear to have been taken, and doubtless the court treated the suit as a personal action for wages.

Hibbard v. Kirby.

(*b.*)   It is not submitted in the brief of counsel for appellant that the third instruction should have been given.

It asserts as a legal proposition that, "a contract entire in point of time must be completely performed before any right to compensation accrues."

The rule seems to be that if the contract of the servant to labor, be for a specified period of time, and payment is to be made, either expressly or by implication of law, at the end of the period, and the servant leaves the service of his master improperly, without a sufficient cause, and without his consent, before the expiration of that time, he can recover no compensation for his services, either on the contract or on a *quantum meruit*.   2 *Chitty on contracts*, (11 *American Ed.*) 844 *and notes*.   See also, *Wright* v. *Morris, as ad.*, 15 *Ark.*, 444 ; *Walworth* v. *Finnegan*, 33 *Ark.*. 751 ; *Fain* v. *Godwin*, 35 *Ark.*, 110.

In this case appellant did not swear that appellee contracted to serve him for a specified period of time to be paid at the end of the period.   His version of the contract was that he employed appellee to make purchases for him at $5 per day, and after that to serve him at $75 per month and his board, until the smelter was erected and put in successful operation.   That he paid him for the days he was engaged in purchasing machinery, and a month's wages, and paid him money whenever he called for it.   Admits that he did not object to his leaving his service ; was not satisfied with his skill as a smelter of silver ores.

(*c.*)   The fifth instruction assumed that appellee was suing on a contract, and asserted as a legal proposition that he could not recover on a *quantum meruit*.

No complaint was filed before the justice, and none was required.

The account filed was for 96 days' labor at $5 per day, with credits deducted.

5.  CONTRACTS FOR SERVICE:  Entire, action on.

6.  JUSTICE OF THE PEACE:  Practice; variance.

Appellee swore that he was employed at $5 per day.

Witness Baldwin testified, without objection from appellant, that the services performed by appellee were worth from three to five dollars per day. This was the only evidence on a *quantum meruit*.

No doubt in a suit before a justice of the peace on an open account for wages, no formal complaint being required or filed, plaintiff may prove a verbal contract for stipulated wages if any was made, or if not, the value of the services rendered.

(*d.*) It may be true as an abstract proposition, and as asserted in the seventh instruction, that when the time of payment for labor is not expressed, there is an implied agreement that payment is to be made when the service is performed.

The remarks made above in relation to the third instruction apply to the seventh.

(*e.*) Upon the whole, the instruction given for appellee, and such as were given for appellant, fairly submitted the case to the jury.

Affirmed.