No. 44,960

BUELL SCOTT, *Appellee,* v. DELMAR KEYSE, a/k/a D. C. KEYSE, *Appellant.*

(438 P. 2d 112)

Opinion filed
March 9, 1968.

*Dale H. Corley* and *Lelyn J. Braun,* both of Garden City, were on the briefs for the appellant.

*Leland E. Nordling, Bernard E. Nordling,* and *A. E. Kramer,* all of Hugoton, were on the briefs for the appellee.

The opinion of the court was delivered by

KAUL, J.: This is an action by plaintiff-appellee, Buell Scott, to recover the purchase price of a used irrigation pump and accessories from defendant-appellant, Delmar Keyse, a/k/a D. C. Keyse. The case was tried to a jury in the lower court and a verdict was rendered for Scott. Keyse perfected this appeal after his motion for a new trial was denied below.

The sole question on appeal is whether the trial court abused its discretion in overruling Keyse's motion for a continuance immediately before the trial of the action.

All dates mentioned herein are in the year 1965.

For many years Scott has been engaged in the business of dealing with irrigation pumps in Johnson, Kansas. Keyse lives in Scott County and in the spring of 1965 came to Johnson to negotiate with Scott for the purchase of a used irrigation pump. On May 5 the parties agreed on the sale of a used pump, gear drive, and a Watson Spicer shaft for a total price of $1,250. Keyse gave Scott a draft for the purchase price on the Garden City Production Credit Association. The pump was installed in Keyse's well. It worked satisfactorily for about two or three weeks then a rattle de-

veloped and Keyse pulled the pump on June 18, after it had been in service for about three or four weeks. Keyse stopped payment on the draft. A trade for a new pump was discussed by Scott and Keyse. Keyse claims an agreement was made and later breached by Scott. Scott claims the second agreement was never consummated.

On July 29 Scott filed this action in the district court of Stanton County. In his petition Scott prayed for judgment on the unpaid draft and for bank protest fees. Service on Keyse was obtained in Scott County on August 3. After securing a ten day extension of time to plead, Keyse filed his answer and counterclaim on September 1 and requested a jury trial. Keyse, as a defense, pleaded misrepresentation and a breach of contract, and in his counterclaim asked compensatory damages for loss of crops, breach of the second agreement, and punitive damages totaling $14,042.50. Scott filed his answer to the counterclaim asserting the used pump had been sold in an "as is" condition. Scott further alleged that he notified Keyse by telephone and letter that the trade deal was not accepted. A copy of Scott's answer to the counterclaim was received in the office of Keyse's attorneys on Friday, September 10. On the following Monday, September 13, the September term of the district court of Stanton County was opened and the docket called. Keyse's attorneys did not appear. The district court set the case for jury trial on Wednesday, September 15, and Keyse's attorneys were notified of the setting by telephone by the court. In the course of the telephone conversation Keyse's attorneys protested the case setting and requested a continuance for the purpose of using discovery procedures and pretrial conference. The court changed the trial setting to September 16 and advised Keyse's attorneys that if they desired a pretrial conference the court would hear the same on either September 14 or 15. Attorneys for Keyse made no further effort to have a pretrial conference. On September 14 they filed a motion requesting a continuance.

Keyse's attorneys made no appearance before the court until the morning of September 16, the day set for the trial. At this time counsel for both parties appeared and presented their arguments on the motion for a continuance. The court denied the motion and commented as abstracted in the record as follows:

"Has defendant complied with Section C of 60-240 as to affidavit of any testimony of witnesses. As to documents and photographs it would appear

defendant couldn't have much surprise but that plaintiff might be prejudiced on counterclaim since it is for damages based upon warranty or breach of contract theory. Plaintiff did not raise any affirmative defenses to cross petition. Attorneys for defendant were not present to answer the docket. Attorneys trying cases in various counties are charged with same duty as in their own county to keep up with their cases. It is hard to call a jury back in some of the counties in my district."

After the motion for continuance was denied the case proceeded to trial and the jury returned a verdict in favor of Scott on September 17, the following day.

At the request of Keyse eight special questions concerning the controlling issues were submitted to the jury. Since the jury found for the plaintiff answers to only four questions were necessary. They are as follows:

"1. Did the plaintiff represent to the defendant that the used pump was in good working condition at the time of purchase?

"ANSWER: No.

"3. Was such pump defective at the time of the sale thereof to the defendant?

"ANSWER: It was not proven so.

"5. Do you find that the plaintiff misrepresented the condition of such used pump to the defendant?

"ANSWER: No.

"6. Do you find that the parties entered into a second agreement for the purchase of a new pump on or about July 10, 1965?

"ANSWER: No.

On appeal defendant concedes that the general rule followed by this court for many years is stated in *State v. Giles*, 119 Kan. 417, 239 Pac. 756:

"Error cannot be predicated upon the refusal to grant a continuance unless it appears that the trial court abused its discretion to the prejudice of the complaining party." (Syl. ¶ 1.)

See, also, *Konitz v. Board of County Commissioners*, 180 Kan. 230, 303 P. 2d 180; *Shore v. Cantor*, 159 Kan. 642, 157 P. 2d 528; *Richmond v. Clinton*, 144 Kan. 328, 58 P. 2d 1116; *Quinton v. Kendall*, 122 Kan. 814, 253 Pac. 600.

Keyse argues the denial of his motion for a continuance was an abuse of discretion which prejudiced him because, by reason thereof, he was denied the right of discovery by interrogatories or depositions and the right to a pretrial conference; and further the

notice given him on September 13, of the trial setting on September 16, was inadequate.

The assignment of cases for trial and continuances thereof are now governed by K. S. A. 60-240, of our new code of civil procedure. Subsections (a), (b) and (c) provide as follows:

"(a) *Assignment of cases for trial.* The district courts shall provide by rule for the placing of actions upon the trial calendar (1) without request of the parties or (2) upon request of a party and notice to the other parties or (3) in such other manner as the judge deems expedient. Precedence shall be given to actions entitled thereto by any statute of the state.

"(b) *Continuances.* The court may for good cause shown continue an action at any stage of the proceedings upon such terms as may be just. When a continuance is granted on account of the absence of evidence, it shall be at the cost of the party making the application, unless the court otherwise orders.

"(c) *Affidavit in support of motions.* The court need not entertain any motion for a continuance based on the absence of a material witness unless supported by an affidavit which shall state the name of the witness, and, if known, his residence, a statement of his expected testimony and the basis of such expectation, a statement that the affiant believes it to be true, and the efforts which have been made to procure his attendance or deposition. The party objecting to the continuance shall not be allowed to contradict the statement of what the absent witness is expected to testify but may disprove any other statement in such affidavit. Such motion may, in the discretion of the court, be denied if the adverse party will admit that the absent witness would, if present, testify as stated in the affidavit, and will agree that the same shall be received and considered as evidence at the trial as though the witness were present and so testified. The same rule shall apply, with necessary changes, when the motion is grounded on the want of any material document, thing or other evidence. In all cases, the grant or denial of a continuance shall be discretionary whether the foregoing provisions have been complied with or not."

Subsection (a), *supra,* is the same as Federal Rule No. 40, of the federal rules of civil procedure, and replaces G. S. 1949, 60-2930, 2931 and 2932.

The effect is to remove whatever mandatory direction was contained in former statutes pertaining to assignment of actions to the trial calendar. This function has always been largely controlled by local court rule and the policy is confirmed by this subsection. (Gard, Kansas Code of Civil Procedure Annotated, § 60-240 [a], p. 197; 3 Vernon's Kansas Statutes Annotated, Code of Civil Procedure, § 240.2, p. 63.)

Subsection (b), *supra,* is a reenactment of G. S. 1949, 60-2933. Subsection (c), *supra,* is a reenactment in substance of G. S. 1949, 60-2934. Although the language is slightly different, a close com-

parison with the former section justifies the conclusion that no change of procedure is effected. (Gard, Kansas Code of Civil Procedure Annotated, § 60-240 [c], p. 198.)

In *State v. Zimmer*, 198 Kan. 479, 426 P. 2d 267, cert. den. 389 U. S. 933, 19 L. Ed. 2d 286, 88 S. Ct. 298, we note the proviso of 60-240 (c), *supra*, that the granting of continuances in all cases shall be discretionary, is in harmony with long-standing case law.

The district court has established a rule that a case at issue will be set for trial at the earliest date available, after the commencement of the term. Stanton County is one of the six counties comprising the Thirty-ninth Judicial District. By statute (K. S. A. 20-1035a) three terms of court are designated to commence on successive Mondays in September of each year—Morton County on the first Monday, Stanton County on the second Monday and Haskell County on the third Monday. The reason for assigning jury cases at issue for trial during the week following the opening day of the term is obvious and such assignment procedure is not in conflict with 60-240 (a), *supra*, of any rule of this court relating to district courts. Our Rule No. 113 (197 Kan., LXXII) was promulgated for the purpose of requiring a court day in each county of a judicial district in each month, except July and August, for the disposition of motions and pending court matters not requiring a jury. Provisions for notice in the rule pertains to the hearing of such matters and not to the setting of jury trials during a statutory term of court, as suggested by defendant's counsel.

The assignment of the case for trial was clearly within the authority of the court under 60-240 (a), *supra*. The only question here is whether the denial of a continuance so prejudiced defendant as to amount to an abuse of discretion.

As was noted by the trial court in its comments, no affidavit by Keyse was filed in support of his motion for a continuance. Keyse merely argues that he was prejudiced in being deprived of pursuing his right to discovery and a pretrial conference. K. S. A. 60-226 provides that a party may take the testimony of any person by deposition upon oral examination or written questions for the purpose of discovery or for use as evidence at any time after commencement of the action, except that if done within twenty days by plaintiff, leave must be obtained and subject further to the provisions of K. S. A. 60-230 (b) providing for control of the procedure by the court to prevent abuse. In this case Keyse was

served with process on August 3. He was immediately entitled to institute discovery proceedings by way of either depositions or interrogatories. Instead he sought and was granted a ten day extension of time in which to answer, and on August 31, filed his answer, counterclaim and request for a jury trial.

In discussing 60-226 (*a*), *supra,* Judge Gard in his commentary says:

"The defendant may serve notice and take depositions at any time after the action is commenced. He need not wait for any prescribed period and may take the depositions before he has filed a responsive pleading. . . ." (Gard, Kansas Code of Civil Procedure Annotated, p. 135.)

Since defendant was entitled to institute discovery proceedings at any time, subsequent to August 3, and failed to exercise such right, or even to mention it until he presented his motion for continuance on September 16, we are unable to find support for his claim of prejudice.

It must be admitted that the trial court's offer to accommodate Keyse by convening a pretrial conference on either September 14 or 15 amounted to short notice. However, here again, Keyse has failed to affirmatively show prejudice of his rights. In this regard Keyse argues that he was surprised by Scott's answer to the counterclaim in which Scott denied that he represented the pump was in good order and alleged that he was selling the pump to Keyse "as is," because he did not have time or equipment to put the pump in proper condition. In his cross-examination, as narrated in the record, Keyse admitted that Scott did not guarantee the used pump and further that he did not ask Scott to guarantee it.

Keyse claims that he first learned the identity of Tom Winger, the previous owner of the pump in question, from the testimony of Scott at the trial. As we have noted, Keyse had ample opportunity to learn of Winger by means of pretrial discovery proceedings. Furthermore, we have examined the affidavit of Winger, attached to defendant's motion for a new trial, and find that Winger could only testify as to the condition of the pump during the time he owned it and when he traded it to Scott for a new pump.

From our examination of the pleadings, the evidence, the court's instructions and special questions, the real issues in this case appear to be (1) did Scott represent or guarantee the condition of the pump at the time he sold it to Keyse, as claimed by Keyse, or was the pump sold in an "as is" condition, as claimed by Scott and

(2) was a second agreement consummated for the trade of the old pump for a new one.

The condition of the pump was not an issue. Scott never claimed the pump was in working order. In this connection he testified as narrated in the record:

". . . That he had a used Byron-Jackson pump but that it wasn't in working order and he didn't have time to make the necessary parts to put it in working order. Did not have time to go to another county and sell a pump or do any pumping on it. That different adapters would have to be put on pump before it could be used and that it took precision work to make the proper change on the pump. He told Keyse he wasn't interested in selling the pump because of this work that had to be done on it. He showed Keyse the pump and told him if he bought used pump he would be buying it "as is" because he could not be responsible for its operation where he did not install the pump. . . ."

The testimony of Winger, as gleaned from his affidavit, would have been of no benefit to Keyse on either issue, as Winger knew nothing about the original sale negotiations between Scott and Keyse or any negotiations pertaining to the subsequent trade.

Keyse further complains that he never learned the identity of the dealer who sold the pump to Winger in the first instance until it was developed by testimony during the trial. The record does not support Keyse's position in this regard. Keyse had in his possession a letter from Scott, dated July 1, 1965, in which Scott wrote:

". . . A few years ago a Fly-By-Night Byron-Jackson dealer located at Liberal, Kansas, and sold this pump to one of our customers. . . ."

Since Keyse had Scott's letter of July 1 he had ample opportunity, if he so desired, to ascertain the identity of the previous dealer, either by investigation or discovery proceedings.

Keyse also complains that he never learned the identity of a workman by the name of McDaniels, who pulled the pump while Winger owned it, until McDaniel's name was mentioned at the trial. Keyse makes no proffer as to what McDaniels's testimony would have been or in what way it might have benefited his case.

There is nothing in the record to indicate that McDaniels had any knowledge of either the first sale agreement or as to negotiations pertaining to the trade deal.

Since defendant has failed to show that his rights were prejudiced by the denial of his motion for a continuance, we find no abuse of discretion on the part of the trial court warranting a new trial. The judgment is affirmed.